IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KRISTINE R.,[1]
on behalf of J.L.R.,

      Plaintiff,

vs.                                                                                                          2:23-cv-01043-MV-LF

MARTIN O'MALLEY,[2] Commissioner
of the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Kristine R.'s Motion to Remand (Doc. 10) filed on April 5, 2024.  Plaintiff's motion was fully briefed on July 17, 2024.  *See* Docs. 16, 17, 18.  Senior District Judge Martha Vazquez referred this matter to me to "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  Doc. 11.  Having read the briefing and being fully advised in the premises, I find that the Administrative Law Judge (ALJ) applied the correct legal standards, and that her decision is supported by substantial evidence.  I therefore DENY Plaintiff's motion and AFFIRM the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.  The minor is identified only by her initials.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

I. **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

2

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a child claimant must establish that he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Social Security Administration regulations provide for a three-step process to determine disability of a child. A child is disabled if the child (1) is not currently engaged in substantial gainful activity; (2) has a medically determinable impairment or combination of impairments that is severe; and (3) the severe impairment meets, medically equals, or functionally equals a listed impairment found in Appendix 1, Subpart P, of 20 C.F.R. Pt. 404. *See* 20 C.F.R. § 416.924(a). If the child is either engaged in substantial gainful activity or does not have an impairment or combination of impairments that is severe, the ALJ does not reach the third step.

If a child's impairment does not match a specifically enumerated impairment found in the Appendix 1 listing, the ALJ conducts a "functional equivalence" analysis by considering six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Under this analysis, the impairments found to afflict the child are considered functionally equivalent to a listed impairment if the child has either a "marked" limitation in any two of the domains, or an "extreme" limitation in any one domain. 20 C.F.R. § 416.926a(d).

### III.     Background and Procedural History

J.L.R. is a 14-year-old girl living with her mother, Plaintiff Kristine R., and two younger sisters in Las Cruces, New Mexico.  AR 41, 56.[4]  Plaintiff filed an application on J.L.R.'s behalf for Disability Insurance Benefits ("DIB") on June 30, 2021, alleging disability since December 4, 2020, due to Disruptive Mood Disorder and Anxiety.  AR 56–57.  The Social Security Administration ("SSA") denied her claim initially and on reconsideration.  AR 56–71.  Plaintiff requested a hearing before an ALJ.  AR 87.  On April 25, 2023, ALJ Karen Wiedemann held a hearing.  AR 35–55.  ALJ Wiedemann issued her unfavorable decision on August 2, 2023.  AR 14.

At step one, the ALJ found that J.L.R. had not engaged in substantial, gainful activity since June 14, 2021, her application date.  AR 18.  At step two, the ALJ found that J.L.R.'s disruptive mood dysregulation disorder and generalized anxiety disorder were severe impairments.  *Id.*  At step three, the ALJ found that none of J.L.R.'s impairments, alone or in combination, met or medically equaled a Listing.  AR 19–21.  Because the ALJ found that none of the impairments met a listing, the ALJ assessed whether J.L.R.'s impairments resulted in limitations that functionally equaled the severity of the listings.  AR 21–28.  After reviewing the evidence, including the opinions of four state agency consultants and two of J.L.R.'s teachers, *see* AR 23–27, the ALJ concluded that J.L.R. had the following limitations in the six functional domains:

- Less than a marked limitation in acquiring and using information;
- Less than a marked limitation in attending and completing tasks;
- A marked limitation in interacting and relating with others;

---

[4] Document 9 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

- No limitation in moving about and manipulating objects;
- Less than a marked limitation in the ability to care for herself; and
- No limitation in health and physical well-being.

*See* AR 22, 27–28. The ALJ therefore found J.L.R. not disabled. AR 29.

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. AR 135–37. On October 2, 2023, the Appeals Council denied the request for review. AR 1–3. Plaintiff timely filed her appeal to this Court on November 22, 2023. Doc. 1.[5]

IV.   **Plaintiff's Claim**

Plaintiff raises only one claim in her motion to remand. *See* Doc. 10. She claims that substantial evidence does not support the ALJ's finding that J.L.R. has less than a marked limitation in the functional domain of attending and completing tasks.[6] Doc. 10-1 at 8. Specifically, she argues that in reaching that finding, the ALJ cherrypicked evidence and failed to properly discuss probative evidence. *Id.* at 9–11. The Commissioner argues that Plaintiff must show that the evidence compels a finding of marked limitation, and that she has failed to do so. Doc. 16 at 9–19. For the following reasons, I agree with the Commissioner and therefore recommend that the Court deny Plaintiff's motion and affirm the Commissioner's decision.

V.   **Analysis**

Plaintiff points to several pieces of evidence that she argues "support at least a marked [limitation] in the domain of attending and completing tasks" and that the ALJ failed to reconcile this evidence with a finding of a less than marked limitation in that domain. Doc. 10-1 at 10. This evidence includes opinions by two of J.L.R.'s teachers and J.L.R.'s § 504 Accommodation

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

[6] This single claim is potentially determinative because the ALJ found one of the two marked limitations required for disability.

Plan. *See id.* at 9–11. Plausibly, this evidence could support a finding of marked limitation; however, under the deferential standards that govern this Court's review, Plaintiff must show that the evidence not only supports, but *compels*, a different factual finding. *See, e.g., Tammi F. v. Saul*, No. CV 20-1079-JWL, 2020 WL 7122426, at *1 (D. Kan. Dec. 4, 2020) (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481, n.1 (1992)). The evidence does not compel the finding that J.L.R. has a marked limitation in the relevant domain. I therefore recommend that the Court deny Plaintiff's motion.

A child will be considered to have a marked limitation in a domain when her impairments seriously interfere with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). The child's day-to-day functioning may be seriously limited when her impairments limit only one activity, or when the interactive and cumulative effects of her impairments limit several activities. *Id.* Marked limitation means a limitation that is more than moderate but less than extreme. *Id.*

In finding a less than marked limitation in attending and completing tasks, ALJ Wiedemann explained as follows:

> [J.L.R.] reportedly had a short attention span. (Exhibit 2B). Her mother testified her daughter would be fidgety. (Hearing testimony). She would reportedly get frustrated and thus not stick to tasks. (Exhibit 1E). She would feel overwhelmed with assignments and just not complete them. She would reportedly not be patient for more than ten to fifteen minutes. She reportedly would stop watching a movie in the middle of it. (Exhibit 7E). On examination, she was attentive. (Exhibit 9F, page 5; Exhibit 10F, page 3; Exhibit 12F, pages 15, 21, 24). In October 2022, she was started on a 504-plan due to struggling academically due to lack of concentration and distraction. (Exhibit 14E, page 3).

AR 27–28.

> a. **The observations of Ms. Ekstrom and Ms. Puente do not compel a finding of a marked limitation.**

Plaintiff first points to the observations of Kelly Ekstrom, J.LR.'s sixth-grade English teacher, and Alexis Puente, her sixth-grade Math teacher, as evidence that the ALJ erred in finding a less than marked limitation in attending and completing tasks. Doc. 10-1 at 9. She highlights that both Ms. Ekstrom and Ms. Puente observed that J.L.R. had a serious problem completing class/homework assignments, and that Ms. Ekstrom also observed that J.L.R. had a serious problem working without distracting herself or others. *Id.* She also highlights Ms. Ekstrom's statement that J.L.R. "was easily distracted by her peers [and] had a hard time focusing during class," and Ms. Puente's statement that J.L.R. "often needs redirection when in . . . class[,] would either be sitting there not working or talking with others[, and] would hardly turn in the weekly homework or in-class assignments would be incomplete." *Id.*

Plaintiff provides no citations to cases where similar observations required a finding of marked limitation in the domain of attending and completing tasks. Although it is true that SSR 09-4P provides that needing extra supervision to stay on task and not being able to complete assignments may be examples of limitations in that domain, it also specifies that these examples "do not necessarily describe a 'marked' or an 'extreme' limitation." SSR 09-4P, 2009 WL 396033, at *5 (February 18, 2009); *see* Doc. 10-1 at 10. I also note that each teacher assessed J.L.R.'s functioning in attending and completing tasks by rating thirteen activities on a five-point scale, where "a serious problem" was a four and "no problem" was a one. *See* AR 233. Ms. Ekstrom found that J.L.R. had "slight" problems with six activities, "obvious" problems with two activities, and "serious" problems, as noted above, with two activities. *Id.* Ms. Puente found that J.L.R. had "slight" problems with two activities, "obvious" problems with six activities, and a "serious" problem with only one activity. AR 241. These ratings were considered by the ALJ,

7

*see* AR 26–27, and do not compel a finding of marked limitation. *See Chavez v. Colvin,* No. 15-CV-00589-GBW, 2016 WL 8230701, at *5 (D.N.M. Sept. 14, 2016) (one very serious and two obvious problems "do not dictate a finding of marked limitation."); *Adams v. Barnhart*, No. 06-CV-01044-MLB, 2006 WL 4045933, at *3 (D. Kan. Dec. 1, 2006) (three teacher questionnaires that identified a serious or very serious problem in between two and four out of the thirteen relevant activity categories supported less than marked limitation); *Chapman v. Astrue*, No. 08-CV-01580-PAB, 2009 WL 2399931, at *2, *8 (D. Colo. July 31, 2009) (teacher questionnaire finding " 'obvious' problems in a number of activities" but serious problems in only two activities "undercuts" other evidence that might have supported a marked limitation).

Plaintiff also argues that the ALJ "recited the statements from these teachers, but did not otherwise explain how their statements were incorporated into the functional assessment finding for the domain of attending and completing tasks." Doc. 10-1 at 9. Although I agree that the ALJ's explanation for finding a less than marked limitation in this domain is terse and does not cite to the observations of Ms. Ekstrom or Ms. Puente, the evidence cited in that explanation provides substantial evidence for the finding. Furthermore, as discussed above and below, the remainder of the record does not compel a finding of marked limitation.[7] The ALJ did not err by failing to explain how the statements of J.L.R.'s teachers were incorporated into her finding in this domain.

---

[7] For this reason, I also reject Plaintiff's argument that the ALJ should not have relied on J.L.R.'s behavior during a medical visit. *See* Doc. 10 at 11. Setting aside the question of whether this kind of evidence is probative as compared to evidence from the classroom, it is simply not the case that the remainder of the evidence is so strong that, absent the ALJ's consideration of the medical visit, a finding of marked limitation would be compelled.

### b. J.L.R.'s § 504 Accommodations Plan is compatible with a less than marked limitation.

Plaintiff next points to J.L.R.'s § 504 Accommodations Plan ("the 504 plan"), arguing that ALJ Wiedemann failed to reconcile evidence of classroom accommodations with her finding of a less than marked limitation in the domain of attending and completing tasks. Doc. 10-1 at 8–9. Although I agree that the ALJ's discussion of J.L.R.'s 504 plan is cursory, I do not agree that the 504 plan provides evidence "adverse" to a finding of less than marked limitation—that is, evidence that the ALJ "rejected" in making her finding—and therefore find no error. *See id.* at 8; *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

The 504 plan affirms that J.L.R. has a mental impairment that "substantially limits one or more of [her] major life activities," and "substantially affects [her] overall performance at school in" concentrating, communicating, learning, and working. AR 272. Consequently, the 504 plan provides that teachers should accommodate J.L.R. by providing preferential seating in class, frequent redirection and checks for understanding, and communication with parents weekly or as needed; and provides that J.L.R. "may take breaks when feeling anxious or overwhelmed" and will be tested in small groups, as needed, with extended time and frequent breaks. AR 273–74.

ALJ Wiedemann references the 504 plan at four points in her decision, including in her discussion of J.L.R.'s functional limitation in attending and completing tasks. *See* AR 20, 24, 26, 28. In discussing the plan in the context of the opinions of State agency consultants Dr. Chavez and Dr. Bell-Pringle, the ALJ notes that J.L.R.'s "recent school records and 504 plan demonstrated significant behavioral concerns that would be expected to result in a greater degree of limitations," as compared to findings of no limitations in, *inter alia*, attending and completing tasks. AR 26. Elsewhere, the ALJ simply stated that J.L.R. had been "started on a 504 plan due to struggling academically due to lack of concentration and distraction," and, in one instance,

9

went on to state that "[i]t was noted she was anxious and had a difficult time advocating properly for herself." AR 20, 24, 28.

In assessing J.L.R.'s limitations, ALJ Wiedemann was required to consider the fact that J.L.R. received accommodations. *See Martinez on behalf of A.V.G. v. Saul*, No. 19-CV-00247 JAP/KRS, 2020 WL 5652235 (D.N.M. Sept. 23, 2020) (citing 20 C.F.R. § 416.924a(b)(7)(iv)). Likewise, the ALJ must discuss "significantly probative" evidence, including accommodations, that she rejected in reaching her functional limitation findings. *See Clifton*, 79 F.3d at 1009–10. The ALJ's decision indicates that she considered J.L.R.'s 504 plan in finding a less than marked limitation in attending and completing tasks. *See* AR 28. Although she did not discuss the particulars of the accommodations provided to J.L.R., there is no indication that she rejected them as evidence; she thus was not *required* to discuss them. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (ALJ's decision is adequate if it discusses evidence that ALJ *rejected* or uncontroverted evidence that ALJ did not rely on.). The accommodations provided in the 504 plan are not so extensive that they would compel a marked limitation in attending and completing tasks.[8] *Cf. Martinez,* 2020 WL 5652235, at *7 (remanding because ALJ did not discuss more extensive accommodations relevant to three functional limitations); *Corley on behalf of C.M.C. v. Commr., SSA*, 752 F. App'x 635, 639–40 (10th Cir. 2018) (remanding because ALJ relied on "good grades" in finding a non-extreme limitation, but did not discuss more extensive accommodations that included modified grading). Thus, although the ALJ's discussion of J.L.R.'s 504 plan is far from comprehensive, I can follow the 504 plan's role in the

---

[8] A "less than marked" limitation is not the same as no limitation. *See* 20 C.F.R. § 416.926a(e)(2)(i) (A marked limitation is "more than moderate" but "less than extreme."); *cf. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[A] moderate impairment is not the same as no impairment at all").

ALJ's reasoning. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (Where the Court "can follow the adjudicator's reasoning in conducting its review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."); *cf. Taylor v. Berryhill*, 679 F. App'x. 661, 664 (10th Cir. 2017) (noting that, despite limited citation in discussion of limitation, the ALJ "discussed in detail all of the substantial evidence" earlier in her opinion").  I therefore do not find that the ALJ erred by failing to discuss the 504 plan more thoroughly.

### VI.   Conclusion

For the reasons stated above, I find the ALJ applied the correct legal standards, and her decision is supported by substantial evidence. I therefore recommend that the Court deny Plaintiff's motion and affirm the Commissioner's decision.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

---

_____
Laura Fashing
United States Magistrate Judge